IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                      Case No.  25-10023-JWB

MIGUEL LOZOYA-SERRANO,

       Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on the government's appeal (Doc. 14) of the magistrate judge's order of release pending trial and motion for detention.  For the reasons stated herein, the government's motion for detention is GRANTED, the magistrate judge's order of release is REVOKED, and Defendant is committed to the custody of the Attorney General pending trial.

I.      **Facts and Procedural History**

On February 20, 2025, the grand jury returned an indictment charging Defendant with one count of unlawful reentry after deportation in violation of 8 U.S.C. § 1326(a).  (Doc. 1). A detention hearing was held on March 10, 2025.  (Doc. 11.)  After the hearing, Magistrate Judge Gwynne Birzer denied the government's motion for detention and entered an order setting conditions of release.  (Doc. 12.)  The order was stayed until March 11, to allow the government to consider filing an appeal.  The government has now filed an appeal and moves the court to enter an order of detention. (Doc. 14.)  The court held a hearing on March 12.  The government proffered facts relating to the alleged offense as follows.

In January 2025, a family member called 911 and stated that there was a domestic violence situation at the home involving Defendant.   According to the caller, who stated she was

Defendant's daughter-in-law, Defendant was threatening his wife and punching holes in the wall of the home. The daughter-in-law stated that the domestic violence situation was ongoing and that Defendant frequently threatened to kill his wife and take his children. The court was provided with the 911 call after the hearing. During the call, it is evident that someone was punching something (when the caller reported that Defendant was punching the walls) and yelling. Through counsel, Defendant asserted that he punched the walls because he was upset with having frozen pipes. The police were dispatched to the home and interviewed Defendant and his wife. The Axon videos were also provided to the court. Defendant informed the officers about his problems in the home due to the weather once they arrived. His wife was also interviewed by officers. She stated that she was scared and that he has, in the past, threatened to kill her, although he did not make such verbal threats that evening. His daughter-in-law expressed concern that Defendant would return to the house if released and told officers that Defendant's wife was scared that he would return. Defendant was arrested on a charge of criminal damage to property. One of the Axon videos reflect that Defendant's son called one of the officers later that evening to inform him that Defendant was at the hospital and asking the son to pick him up. The officer advised the son that Defendant was to abide by the no contact order and not to return home or he would be arrested. The son indicated that "we" (the family) wanted him in jail. The son told the officer that he would not go pick up his father. Defendant was later charged with illegal reentry in this case.

Defendant has an extensive criminal history that began in 1995. Although some charges were traffic offenses, Defendant has also been convicted of driving under the influence on two occasions and arrested for that same offense on two other occasions. Notably, Defendant has a significant history of failing to appear. In one case alone, he failed to appear on four occasions and warrants were issued. Defendant also has a history of being removed or deported from the

United States and then returning without authorization. Defendant was deported or removed in 2011, 2014, 2020, and 2022. According to Defendant's Mirandized statement, he reentered the country approximately two years before his arrest in January 2025.

When in the United States, Defendant has resided in the Wichita area for the last 19 years. He has been employed in the concrete industry. He worked several years for Beran Construction. Defendant informed the court that he has recently worked for Kansas Construction although the company denied that it employed him and a search of their records did not reveal an individual with Defendant's name as an employee. Defendant asserts that he is not a flight risk and that if released he will return to his wife and family. Defendant has four children, including a child who is severely disabled and is the reason that Defendant provided for his continued presence in the United States. Defendant alleges that his income provides for the family's housing and needs.

## II.    Standard

Pursuant to 18 U.S.C. § 3145(a)(1), the government may seek review of a magistrate judge's order of release. The district court's review of a magistrate judge's order of release is de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). A de novo evidentiary hearing, however, is not required. The district court may either "start from scratch and take relevant evidence or incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted." *United States v. Collier*, No. 12-20021-09, 2012 WL 4463435, at *1 (D. Kan. Sept. 27, 2012) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)).

Under the Bail Reform Act of 1984, the court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and

the community." 18 U.S.C. § 3142(e). In making this determination, the court must take into account the available information concerning

> (1) The nature and circumstances of the offense charged...;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act provides a rebuttable presumption of flight risk or danger to the community in certain cases, but that particular presumption does not apply here. *See* 18 U.S.C. § 3142(e). The government has the burden to prove flight risk by a preponderance of the evidence and to prove dangerousness by clear and convincing evidence. *United States v. Dermen*, 779, Fed. App'x 497, 500–01 (10th Cir. 2019).

## III.    Analysis[1]

### A. Unlawful Immigration Status and Immigration Detainer

---

[1] The parties also asked the court to rule on the authority of the magistrate judge to stay the release order. As stated during the hearing, the court finds that the magistrate judge had the authority to stay Defendant's release order pending the filing of an appeal. After review of the materials filed on appeal and the proffer to the court, this court then further stayed the release order pending a decision on the matter. The court declines to issue a broad ruling about the propriety of a stay pending a hearing. The undersigned's practice is to immediately review the materials on these issues, determine the propriety of a continued stay under the law, and quickly hold a hearing as occurred in this case.

In this case, it is undisputed that Defendant has been previously deported from the United States on several occasions. In a Mirandized statement, Defendant also admitted to not having asked permission to reapply for admission. The court provides that background to address an initial issue presented to Defendant, which is, how can the court release him on bond conditions which prohibit any violations of federal law if his presence in the community is a violation of 8 U.S.C. § 1326(a)?

At the outset, the court notes that the Tenth Circuit has generally held that removable aliens cannot be detained solely because of their status. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) ("[A]lthough Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable aliens on that list."). The Tenth Circuit has also held that the fact a Defendant is subject to an ICE detainer cannot be the basis, in and of itself, for detention. *United States v. Salas-Urenas*, 430 F. App'x 721, 723 (10th Cir. 2011). Those principles of law are fine as far as they go; however, as noted at the hearing, these cases appear to group all removable aliens into one category and do not distinguish aliens who have been previously removed or deported, like Defendant, from those who are merely removable. In this case, Defendant is charged under 8 U.S.C. § 1326(a). Unlike other offenses predicated on an illegal alien's unlawful entry into the country, which are generally committed, if at all, at the time of the unlawful entry, section 1326 makes it a crime for an alien who was previously deported to simply be "found" in the United States without permission of the Attorney General or the Secretary of Homeland Security. More specifically, section 1326(a) states, in relevant part that "any alien who has been . . . deported[] or removed . . . and thereafter . . . *is at any time found in[] the United States* [without proper permission] shall be fined under Title 18, or imprisoned not more than 2

years, or both." By contrast and by way of example, section 1325(a), entitled "Improper entry by alien," states

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

That statute criminalizes several different methods of illegally entering the country and/or evading detection for such unlawful entry, but it does not criminalize the alien's mere presence in the United States thereafter.

The reason this distinction appears important is that one of the mandatory conditions common to any release order prescribed under the Bail Reform Act is that "the person not commit a Federal, State, or local crime during the period of release." 18 U.S.C. § 3142(b) (mandatory condition for release on personal recognizance or unsecured appearance bond); § 3142(c) (same requirement for release on additional conditions). Thus, for an individual like Defendant, as to whom the record is clear that he has been deported and has not obtained the proper permission to reenter the country, he cannot possibly comply with this mandatory condition because the moment he steps out of custody he is in violation of 18 U.S.C. § 1326(a), which criminalizes his mere presence in the United States without any additional actions or intent. Any judge who releases such a person is effectively aiding and abetting the commission of that offense, certainly in spirit if not technically so. And even if Defendant was released pending trial, nothing would preclude the court from commencing bond revocation proceedings the moment he walked out the door based on the same fact that his mere presence in the United States is unlawful under 8 U.S.C.

§1326(a).  Accordingly, while it is true that removable aliens cannot be detained under the Bail Reform Act based solely on their status as removable aliens, *Ailon-Ailon*, 875 F.3d at 1338, and that an ICE detainer alone does not justify detention, *Salas-Urenas*, 430 F. App'x at 723, it certainly appears that there could be at least one subset of illegal aliens as to whom detention might be required under the Bail Reform Act – those aliens as to whom their mere presence in the country is a crime under 8 U.S.C. § 1326(a).

At the hearing, Defendant argued that Congress' failure to include previously deported aliens among the categories of defendants as to whom the rebuttable presumption of detention applies under 18 U.S.C. § 3142(e) is strong proof that no such presumption exists under the Bail Reform Act.  Other courts have made similar observations.  *See, e.g., Ailon-Ailon*, 875 F.3d at 1338 ("although Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable aliens on that list").  The problem with that argument is that it focuses on whether conditions will ensure a defendant's appearance and provide adequate protection to other people and the community.  That's not the issue here.  Unlike section 1326(a), none of the offenses listed under section 3142(e) makes it illegal for a person to be at large in the community, thus none of those offenses make it impossible for a defendant to comply with the mandatory bond condition that he not commit another crime.  Indeed, the presumption under section 3142(e) is *rebuttable*; but the impediment to a defendant's release arising under section 1326(a) cannot be rebutted by evidence related to his risk of flight or danger to the community because those are not at issue under section 1326(a).  Rather, under section 1326(a), Congress has prohibited not only a defendant's unlawful reentry into the United States, but also his mere presence in the country at any time thereafter.  That is the key issue.  Thus, while Congress might have chosen to add a separate subsection to section 3142 to state that persons who cannot be

lawfully released into the community must be detained pending trial, Congress might also have easily concluded that the very first condition to be imposed on every person who is released pending trial – that they not commit another crime – was more than adequate to ensure that judges did not release the small but distinct subset of persons whose mere presence in the country was clearly an ongoing and continuing crime. Therefore, Congress' failure to include a *non-rebuttable presumption* of detention for previously deported aliens among the list of offenses giving rise to a *rebuttable presumption* under these circumstances in not persuasive on this point.

The Tenth Circuit has also concluded that the structure of the Bail Reform Act forecloses any suggestion that Congress intend to exclude removable aliens in general from consideration for release under the Bail Reform Act. Specifically, in *Ailon-Ailon*, the court of appeals observed that the Bail Reform Act authorizes temporary detention of certain aliens while immigration officials are afforded the opportunity to take custody of such persons. 875 F.3d at 1338 (analyzing 18 U.S.C. § 3142(d).) The aliens as to whom this temporary detention procedure applies are described as a person who "is not a citizen of the United States or lawfully admitted for permanent residence," and who presents a flight risk or danger to any other person or the community. 18 U.S.C. § 3142(d)(1)(B). This temporary detention procedure goes on to state that "[i]f the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id.* § 3142(d).

The description of the aliens to whom this process applies is exceedingly broad, sweeping far beyond the subset of persons who fall with the scope of 8 U.S.C. § 1326(a). Accordingly, there is nothing inconsistent about Congress' command that when immigration officials fail to take

custody of aliens unlawfully in the country, they are to be "treated in accordance with the other provisions of this section," while at the same time expecting that courts will not release the subset of those persons whose presence in the country amounts to a new crime or the continuing commission of an old crime. This conclusion is not contrary to the Tenth Circuit's conclusion in *Ailon-Ailon*, because the court of appeals was addressing application of the Bail Reform Act to "removable aliens" generally, not just the subset of aliens encompassed by 8 U.S.C. § 1326(a).

Ultimately, the court declines to decide this appeal on the basis described above. Although these issues were discussed at the hearing, they were not the focus of the briefing. Obviously, the court is bound by Tenth Circuit authority on this issue although, as described above, Tenth Circuit authority does not appear to foreclose the distinction between removable aliens writ large and the distinct subset who are subject to 8 U.S.C. § 1326(a). Given the substantial disagreements surrounding this topic, rather than breaking any new ground here, the court will proceed to analyze the factors from section 3142(g) on the merits. Nevertheless, the undersigned notes that it is not the only court to recognize that release of a defendant such as Mr. Lozoya-Serrano on bond is essentially allowing further violations of the law. *See United States v. Vencomo-Reyes*, No. CR 11-2563 JB, 2011 WL 6013546, at *13 (D.N.M. Nov. 28, 2011) (discussing that releasing the defendant on bond will allow him to violate United States immigration laws). Moreover, the eventual resolution of this question would provide important bright-line rules regarding the propriety of releasing aliens who cannot lawfully be present in this country.

**B.    § 3142(g) Factors**

The court will proceed to evaluate the factors as required under the Bail Reform Act.

**Nature and circumstances of the offense**. Defendant is a citizen of Mexico without lawful status in this country and charged with unlawful re-entry under 8 U.S.C. § 1326(a). The

penalty for the offense charged includes the possibility of imprisonment for a term of not more than ten years.[2] 8 U.S.C. § 1326(b)(1).  (Doc. 1.)  Defendant was previously convicted of this offense in 2014.   *United States v. Lozoya-Serrano*, Case No. 14-10061-EFM.   After this conviction, Defendant reentered the United States and was removed again in September 2020. Defendant then reentered the United States at some point and was again removed in August 2022. According to Defendant's post-Miranda interview with law enforcement, he again re-entered the United States without inspection about two years prior to January 2025.   On January 21, 2025, Defendant was arrested for criminal damage to property by the City of Wichita police.  The alleged repetitions of the offense indicate a significant probability that Defendant will not abide by conditions placed on him by this court.  This factor favors detention.

**Weight of the evidence**. The weight of the evidence against Defendant appears strong, given the prior conviction for essentially the same charge and Defendant's admissions during a Mirandized statement.  This factor also weighs in favor of detention.

**History and characteristics of Defendant**. Defendant has a history of being in the United States unlawfully and of repeated removals.  He also has a prior history of driving under the influence.  As discussed, Defendant has a history of repeated failures to appear in both Colorado and Kansas state court after being charged with various crimes.  The court has significant concerns that Defendant will flee to Mexico or fail to appear given Defendant's history.

Defendant argues that he will not flee because he has family in the Wichita area to return to and has lived and worked in the area for years.[3]  While those factors might support a finding

---

[2] Although the maximum term of imprisonment for a violation of this statute is listed as two years for the base offense, subsection b authorizes longer sentences for individuals who satisfy certain aggravating criteria.  8 U.S.C. § 1326(a), (b).  A person who violates this statue following a prior felony conviction faces a prison term of up to ten years.  *Id.* § 1326(b)(1).  The bond report filed in this case indicates Defendant has a least two prior felonies.  (Doc. 16 at 4, 6.)

[3] Defendant's characterization of himself as a loving father who wants to return home is in dispute with the January 2025 Axon video evidence and the 911 call.  That evidence reflects a family who is scared of Defendant and would

that Defendant is unlikely to flee, his criminal history tells a different story.  Further, although

Defendant asserts that he can return to his home and work, he currently has no lawful status to be

in this country, and thus he cannot lawfully work.  Although the court cannot detain an individual

based on his immigration status and the existence of an ICE detainer, alone, these facts are relevant

to the "detention decision as part of the history and characteristics of the defendant." *United States*

*v. Salas-Urenas*, 430 F. App'x 721, 723 (10th Cir. 2011).

Here, because of Defendant's status as an illegal alien, he faces almost certain deportation.

Notably, Defendant did not assert that he has a basis to seek relief from removal.  Therefore, the

likely end result from these proceedings (after the serving of any potential sentence) is that he will

be deported to Mexico.  If Defendant is released on bond and then flees, he will evade any prison

sentence and deportation.  Furthermore, Defendant may attempt to flee and remain in this country

undetected given his history of being in this country without authorization and his failure to appear

for proceedings.

In a similar vein, section 3142(g)(3)(B) directs the court to consider "whether, at the time

of the current offense or arrest, the person was on probation, on parole, or on other release pending

trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local

law."  Based on his prior deportation following conviction under 8 U.S.C. § 1326(a), it is obvious

that Defendant is subject to a removal order from immigration officials.  Such orders are essentially

automatically reinstated when a person thus removed returns unlawfully to the United States.  8

U.S.C. § 1231(a)(5).  Thus, when he was found in this case, Defendant was subject to and in

violation of federal removal order that prohibited his presence in this country.  While that does not

---

prefer that he remain in jail.  Further, although not considered by the court in this ruling, the court notes that it is typical for family members to be present at these hearings in support of the defendant seeking to be released to family. That did not occur in this case.

fall precisely within the scope of section 3142(g)(3)(B) because Defendant was not "on release," section 3142(g)(3) is written in non-exhaustive language, and the court finds that Defendant's presence in this country in violation of both 8 U.S.C. § 1326(a) and the federal removal order that directed his prior deportations from this country is relevant to inquiry regarding whether Defendant is a flight risk.

Based on the foregoing, the court finds that Defendant poses a flight risk, and this factor favors detention.  He has repeatedly demonstrated that he will not comply with statutes, immigration orders, and court orders that prohibit his presence in this country and that direct him to appear and answer for those and other crimes.  The bond report cites numerous instances in which Defendant failed to appear as directed by judges like the undersigned.  There is no reason to believe this case will yield a different result.

**Nature and seriousness of danger.**

The court is required to order the pretrial release of a person subject to conditions unless the court determines that such release will endanger the safety of any other person or the community.  *See* 18 U.S.C. § 3142(b).  "The concern about safety is to be given a broader construction than the mere danger of physical violence.  Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)).  Here, as reflected in this order, Defendant's presence in the public is a violation of this country's immigration laws (presuming he is not detained by ICE upon his release).  Further, Defendant does not have legal authorization to work in the United States and, as such, his attempt to work would be a violation of law for the employer.  The larger danger, however, is Defendant's recent criminal activity and his history of

driving under the influence.  Driving under the influence of a substance poses serious risks for those around the driver.  Although Defendant's convictions were several years ago, Defendant was arrested for similar charges in 2022.  Significantly, however, there is a clear risk of danger to Defendant's wife if he is released.  Based on the 911 audio and the Axon videos, the family is scared of Defendant, he has threatened to kill his wife in the past, and he has demonstrated anger issues.  Therefore, the court finds that he is a danger to his wife and he is also a danger to the community in that he may continue to use substances and operate a vehicle and, as stated repeatedly, his mere presence in the community is yet another crime that constitutes a danger to the community under *Cook*.  The court finds that no condition or combination of conditions will assure that Defendant will not pose a danger to the safety of any other person or the community. § 3148(b)(2)(A).

Further, based on its consideration of the factors in § 3142(g), the court finds the government has shown by a preponderance of the evidence there are no conditions or combination of conditions that will reasonably assure the Defendant's appearance as required in this case. Defendant's long history of engaging in criminal conduct which include repeated re-entries to this country after deportation and failing to appear as required for court hearings, lead the court to conclude that Defendant would be unlikely to comply with court conditions requiring him to appear as required and indicate a significant risk of flight.  The court concludes there is no condition or combination of conditions that would assure Defendant's appearance as required if he were released.

## IV.   Conclusion

The magistrate judge's order of release previously entered (Doc. 12) is accordingly REVOKED and the government's motion for detention (Doc. 14) is GRANTED.

Defendant Miguel Lozoya-Serrano is hereby committed to the custody of the Attorney General, pending trial, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel and, upon an order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is held shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.  Dated this 14th day of March 2025.

___ _s/ John Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE